# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| In Re | |
| MICHAEL RAY DEAN, | **Bankruptcy Case** |
| PENI LEE DEAN, | **No. 08-00227-JDP** |
| **Debtors.** | |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

J. Scott Escujuri, Boise, Idaho, attorney for Kelly I. Beeman.

Jeremy J. Gugino, Boise, Idaho, Chapter 7 Trustee.

## *Introduction*

Debtors Michael and Peni Dean ("Debtors"), with the assistance of

their attorney, Kelly I. Beeman ("Beeman"), sought relief under chapter 7[1]

of the Bankruptcy Code by filing a voluntary petition on February 11,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

MEMORANDUM OF DECISION - 1

2008.  As explained below, Debtors' experience was less than satisfying.

Based upon the events of their case, on September 13, 2008, the trustee in

their case, Jeremy J. Gugino ("Trustee"), filed a motion under § 329(b)

wherein he asks the Court to order Beeman to disgorge a portion of the

attorneys' fees he collected from Debtors.  Docket No. 64.  Following an

evidentiary hearing on the motion, the Court invited the parties to submit

additional briefing, and deemed the issues under advisement.  Having

carefully considered the evidence and record, the parties' arguments, and

the applicable law, the Court concludes Trustee's motion should be

granted in part.[2]

### Facts

This is an unfortunate tale.

Beeman is a licensed attorney with 25 years of experience practicing

bankruptcy law in this District.  He has represented debtors and creditors,

and acting through his company, Trustee Services Corporation, he served

---

[2] To the extent required by the Rules, this Memorandum constitutes the
Court's findings of fact and conclusions of law.  Rules 9014, 7052.

MEMORANDUM OF DECISION - 2

for many years as both a chapter 7 and chapter 13 bankruptcy trustee.

In early December, 2007, Debtors retained Beeman to analyze their dismal financial situation, to advise them about their prospects if they filed for bankruptcy relief, and if that course was selected, to prepare and file the necessary petition, schedules, and related documents, and to represent them in that bankruptcy case. For these services, Beeman requested and was paid $1,875 by Debtors.

When Debtors contacted Beeman, one of their principal assets was a 2003 Hurricane Motorhome. This asset was important to the Debtors because Mr. Dean used it as his residence when working at his job in Nevada.

Beeman testified that Debtors told him they had borrowed money in October, 2007 from Peni Dean's mother, Diane Gladman ("Gladman"), in order to purchase the motorhome, and that Gladman had been granted a security interest in the motorhome to secure Debtors' promise to repay the loan. However, Beeman was wary. He testified that although Debtors were adamant that Gladman had been given a security interest in the

MEMORANDUM OF DECISION - 3

motorhome, they were unable to produce for him any documents to

evidence that a security interest had been granted or perfected.  Fearing

there may be a problem with the enforceability of Gladman's secured

interest in a bankruptcy case, Beeman became concerned about the

potential of a conflict of interest if, in representing Debtors, he also helped

one of their creditors to perfect a lien.  As a result, Beeman advised Debtors

that they should seek independent legal counsel to advise and assist them

in perfecting Gladman's lien on the motorhome before any bankruptcy

petition was filed.  Beeman referred Debtors to another attorney in Boise.

Debtors sought the advice of the other attorney, but they decided not

to retain him because they felt his fees were too high.  Instead, they

unsuccessfully attempted to document and perfect Gladman's lien on their

own.  When Debtors next consulted Beeman, they told him they had

contacted the other lawyer, and that the lien on the motorhome was now in

order.  They did not, however, tell Beeman that they elected not to hire

separate counsel, or that they had attempted to perfect the Gladman lien

on their own.

MEMORANDUM OF DECISION - 4

Based upon Debtors' assurances that the motorhome lien was no longer an issue, Beeman filed Debtors' bankruptcy petition on February 11, 2008. In the bankruptcy schedules he prepared for Debtors, and that they signed, Beeman listed the motorhome as an asset in Debtors' schedule B, and listed Gladman as a secured creditor in schedule D.[3] Beeman testified that Debtors initialed each page of the petition and schedules prior to filing them.[4]

Significantly, prior to filing the bankruptcy case, Beeman did not ask Debtors to produce any documents evidencing Gladman's lien. Beeman

---

[3] Acting on Beeman's advice, Debtors also claimed a homestead exemption in the motorhome on schedule C. Trustee would later object to this claim of exemption. Docket No. 19. After an evidentiary hearing on Trustee's objection, and while the issues were under advisement for decision by the Court, Beeman filed an Amended Schedule C for Debtors, Docket No. 41, wherein they abandoned their exemption claim. Trustee responded by withdrawing his objection to Debtors' exemption claim. Docket No. 42. On May 19, 2008, the Court entered an order deeming any issues raised by Trustee's objection to the claim of exemption moot. Docket No. 44.

[4] Beeman testified that his standard practice in every bankruptcy case is to require his debtor clients to sign or initial every page in the bankruptcy petition and schedules, and according to Beeman, to thereby attest to the accuracy of the information therein. He testified that he retained the original documents that bear Debtors' initials on each page of the schedules. They were not offered into evidence at the hearing.

MEMORANDUM OF DECISION - 5

also acknowledges that, prior to filing Debtors' bankruptcy case, he did not review the records appearing on the Idaho Transportation Department's website to verify that Gladman was indeed properly listed as a lienholder on the title to the motorhome.

On February 23, 2008, Trustee sent an email to Beeman indicating that a title report he had obtained from the State's website reflected that there were no liens on the motorhome. Absent plausible explanation, Trustee indicated his intent to seek turnover of the motorhome from Debtors so it could be sold.

Beeman phoned Debtors about this problem, and Peni Dean told him that it was probably an oversight, and that she would attend to it. At that time, Beeman advised Peni Dean about the pitfalls associated with attempting to perfect a lien on their assets post-petition; he counseled her to take no further action to perfect the lien. Despite this advice, Debtors took the steps required to perfect Gladman's purported lien; the Department of Transportation records show the lien was noted on the motorhome title on March 7, 2008. Ex. 3.

MEMORANDUM OF DECISION - 6

On March 14, 2008, Trustee initiated an adversary proceeding

against Debtors and Gladman to avoid the post-petition creation of

Gladman's lien pursuant to § 549(a), and to recover possession of the

motorhome.  Docket No. 20.  Eventually, Gladman agreed to release her

lien on the motorhome, and Debtors turned the vehicle over to Trustee,

which was later sold at auction for $8,000.

### *Discussion*

### I.

All agree that Debtors hired Beeman to help them navigate the

complex waters of a bankruptcy case.[5]  Though Debtors ultimately

---

[5]  Beeman's Rule 2016(b) compensation disclosure form filed in this case
provides that:

> The Services rendered or to be rendered [by Beeman to Debtors]
> include the following:
>
> a) Analysis of the financial situation, and rendering
> advice and assistance to the debtor(s) in determining
> whether to file a petition under title 11 of the United
> States Code.
> b) Preparation and filing of the petition, schedules,
> statement of financial affairs and other documents
> required by the court.
> c) Representation of the debtor(s) at the meeting of
> creditors.

Docket No. 4.

MEMORANDUM OF DECISION - 7

received a discharge of their debts, in his § 329(b) motion, Trustee argues

that Debtors did not receive adequate representation from Beeman, or as

he put it at the hearing, "they got short changed" for the fees they paid

Beeman.  Docket No. 82, Transcript of Hearing, p. 46, line 4.  Trustee

therefore asks the Court to order Beeman to disgorge the fees Debtors paid

to him.

It seems clear that, at the time Beeman filed Debtors' bankruptcy

petition, that based upon Beeman's advice, Debtors anticipated they would

be able to retain the motorhome and that Gladman's claim was secured.

As noted above, it was important that this occur.  Debtors used the

motorhome as Michael Dean's residence while at his job site in Nevada.

Moreover, because she was Peni Dean's mother, Debtors were especially

concerned that Gladman could be repaid in preference to their unsecured

creditors.  Unfortunately, as things turned out, Debtors' intentions were

frustrated by their bankruptcy filing.  In the end, Gladman's lien was

unenforceable in bankruptcy, and Debtors were compelled to surrender

the motorhome to Trustee.

MEMORANDUM OF DECISION - 8

Trustee argues that, had Beeman been more vigilant in his role as

their attorney prior to filing Debtors' petition, they would not have lost this

important asset.  To partially assuage this bad result, Trustee requests that

Beeman be ordered to disgorge some of the fees Debtors paid to him.

## II.

Section 329(b)[6] allows the Court to examine the reasonableness of the

fees paid by a debtor to an attorney in connection with a bankruptcy case.

*Hale v. U.S. Trustee*, 509 F.3d 1139, 1147 (9th Cir. 2007).  If the Court

determines that an attorney's compensation is excessive, it may reduce or

deny compensation, and order any excess returned.[7]  *Id.*; *Am. Law Center*

---

[6] Section 329(b) provides: "If such compensation exceeds the reasonable
value of any such services, the court may cancel any such agreement, or return of
any such payment, to the extent excessive, to – (1) the estate, if the property
transferred – (A) would have been property of the estate . . . or (2) the entity that
made such payment."

[7] At the hearing, counsel for Beeman appeared to, indirectly at least,
question Trustee's standing to prosecute a motion to disgorge fees under § 329(b)
by arguing that it was "not his job" to challenge Beeman's advice.  Docket No. 82,
Transcript of Hearing, p. 75, line 4.  This argument is incorrect.  Any "party in
interest" in a bankruptcy case may file a motion to disgorge excessive fees
pursuant to § 329(b).  Rule 2017(a); *In re Dunnagan*, 02.1 I.B.C.R. 47, 48 (Bankr. D.
Idaho 2002).  Because debtors are frequently unable, or can not afford, to pursue
such a motion, the Court commends Trustee for his initiative.

MEMORANDUM OF DECISION - 9

*PC v. Stanley (In re Jastrem)*, 253 F.3d 438, 443 (9th Cir. 2001).

In assessing the reasonable value of the services rendered by an attorney to a debtor, the Court should consider the same criteria set forth for determining the proper amount of compensation for estate professionals under § 330(a). *In re Jastrem*, 253 F.3d at 443; *In re Buckner*, 350 B.R. 874, 879 (Bankr. D. Idaho 2005); 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 329.04[1](c). Accordingly, in examining whether the amount paid by Debtors to Beeman was reasonable in comparison to the services he rendered to them, the Court should consider the nature, extent, and value of the services rendered, taking into consideration all relevant factors, including the time spent and the rates charged for the services, as well as the customary compensation of comparably skilled attorneys in other cases. 11 U.S.C. § 330(a)(3); *In re Jastrem*, 253 F.3d at 443; *In re Buckner*, 350 B.R. at 879, n. 5. Beeman bears the burden of justifying the amount of fees he collected to the same extent that a professional must prove entitlement to fees under § 330. *In re Jastrem*, 253 F.3d at 443; *In re Castorena*, 270 B.R. 504, 515 (Bankr. D. Idaho 2001). The Court is granted

MEMORANDUM OF DECISION - 10

broad discretion in determining reasonable compensation. *Hale*, 509 F.3d

at 1147; *In re Jastrem*, 253 F.3d at 442-43; *In re Castorena*, 270 B.R. at 515.

Frequently, a challenge to the reasonableness of a debtor's attorneys'

fees focuses on the amount of time spent by the lawyer in providing

services to the debtor, or the hourly or other rate charged by the lawyer for

those services. This is not such a case. Here, Trustee does not indict

Beeman for spending inadequate time in preparing and filing Debtors'

bankruptcy case,[8] or argue that his hourly rate is excessive.[9] Instead, in this

---

[8] In support of his fees, Beeman filed an affidavit and offered his testimony at the hearing, about the time spent in representing Debtors. In the affidavit, Beeman explains:

> I put a considerable amount of time in this matter, fully kept the Debtors informed of all matters before the Court regarding their bankruptcy, attended miscellaneous hearings on behalf of the Debtors, had numerous meetings with the Debtors, and achieved a discharge for the Debtors of their bankruptcy, all of which were reasonable and necessary.

Docket No. 74, ¶ 11.

Apart from the affidavit, Beeman's testimony at the hearing reveals that he met only twice with Debtors prior to filing, engaged in one email exchange with Trustee, and had one phone conversation with Peni Dean after the petition was filed. Neither Beeman's affidavit nor testimony quantify the amount of time

MEMORANDUM OF DECISION - 11

instance, Trustee's motion calls into question the quality of the legal

services Beeman provided to Debtors for the fees he charged.  In other

words, Trustee contends Debtors did not receive adequate "value" for the

amount they paid Beeman.

In the Court's view, one of the important purposes of § 329 is to

ensure that attorneys provide competent representation to debtors.  *See In*

*re Grant*, 14 B.R. 567, 569 (Bankr. S.D.N.Y. 1981) (explaining that "[i]n

reviewing an attorney's fee to determine whether it is reasonable under the

circumstances the Court must consider the nature of the services and the

---

he spent rendering service to Debtors.  Even so, since Trustee has not challenged
Beeman fees based on "time spent," the Court expresses no opinion on this
aspect of his services.

[9]  Beeman testified that the amount he collected from Debtors in this case
reflected his "normal" rate for services for a chapter 7 case, but he acknowledged
that he charges some clients more and some less, depending upon the facts and
issues presented.  Beeman's approach seems logical enough, since each
bankruptcy case presents potentially unique challenges and demands for
counsel.  Still, other than the complication arising from Gladman's avoidable
lien, Debtors' case was not particularly complex.  Beeman's fee of $1,875 would
therefore seem somewhat high when compared to the rates charged by other
debtors' attorneys in this District, which generally seem to hover around $1,000
or less.  Again, because Trustee does not attack Beeman's "rate," the Court makes
no finding on this point.

MEMORANDUM OF DECISION - 12

competence of the performance.").  If a bankruptcy court finds that an

attorney fails to competently perform his or her duties, an order requiring

the attorney to disgorge fees pursuant to § 329(b) is proper.  *See In re*

*Wilson*, 11 B.R. 989, 991 (Bankr. S.D.N.Y. 1981) (finding that an attorney's

representation of the debtor was neither competently performed or

zealously provided, it ordered that all fees paid to the attorney be remitted

to the debtor).  In other words, in considering the "value" of the services

provided to a debtor by an attorney, the Court must consider the quality,

not just the quantity, of those services.

III.

The Court concludes that, because he did not make an adequate

inquiry into the status of the Gladman lien prior to filing Debtors'

bankruptcy case, Beeman did not competently represent them.

If Gladman's loan balance was properly secured by an unavoidable

lien on the motorhome, Trustee would have had no motivation to seize and

sell it in Debtors' bankruptcy case.  At the hearing, Beeman explained,

quite adamantly, that he felt he could not properly assist Debtors in their

MEMORANDUM OF DECISION - 13

efforts to protect Gladman or to help perfect her purported lien on the

motorhome because of what he perceived to be a conflict of interest.

Rather than abandon Debtors to their own devices, or advise them they

should not seek bankruptcy relief, Beeman referred them to someone he

felt could competently assist them in perfecting Gladman's security

interest.  Beeman should not be faulted, nor should his fees be jeopardized,

for deferring to appropriate ethical concerns.

That said, however, Beeman's performance was lacking in this case

when Debtors returned and told him the Gladman problem had been

resolved.  Prior to placing the motorhome within the grasp of a diligent

bankruptcy trustee, Beeman should have exercised more care and initiative

in determining that the Gladman lien had now been perfected, and that

Debtors would not be prejudiced by a bankruptcy filing.

Amendments to the Code occasioned by passage of the Bankruptcy

Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")

significantly augmented an attorney's duties concerning the accuracy of

information included in bankruptcy filings.  For example, new

MEMORANDUM OF DECISION - 14

§ 707(b)(4)(D) provides that:

> The signature of an attorney on the petition shall
> constitute a certification that the attorney has no
> knowledge *after an inquiry* that the information in
> the schedules filed with the petition is incorrect.

11 U.S.C. § 707(b)(4)(D) (emphasis added).  Only a handful of bankruptcy

courts have examined this provision since it became effective.  One

explained that the language of this provision and the history surrounding

Rule 9011 suggests that the "inquiry" referred to in the statute "need only

be a 'reasonable' one."  *In re Withrow*, 391 B.R. 217, 227 (Bankr. D. Mass.

2008).  That decision cautioned courts to exercise care in not imposing

burdens on debtors' counsel which are impractical to satisfy under the

real-life circumstances implicated in bankruptcy cases.  *Id*.  However,

commenting upon the debtor's attorneys' new heightened duty of

verification, another court explained:

> [the] general drift [of BAPCPA's amendments] is
> clear: debtors' counsel are to exercise significant
> care as to the completeness and accuracy of all
> recitations on their clients' schedules, after they
> have made a factual investigation and legal
> evaluation that conforms to the standards

MEMORANDUM OF DECISION - 15

> applicable to any attorney filing a pleading,
> motion, or other document in a federal court.

*In re Robertson*, 370 B.R. 804, 809 n. 8 (Bankr. D. Minn. 2007).

In his affidavit, Beeman explained that he assumed the Gladman lien was enforceable in bankruptcy because Peni Dean told him so and because Debtors later initialed the schedules indicating that they were accurate. *See* Docket No. 74, ¶ 7. He argues this assumption was reasonable because he had previously referred Debtors to another attorney and he had no reason to believe that the lawyer had not assisted them in perfecting the lien. *See* Docket No. 81. The Court disagrees that Beeman's inquiry was adequate under these circumstances.

Several of the questions framed by the Court in *In re Withrow* for determining whether a debtor's attorney had satisfied his statutory duties are helpful in analyzing Beeman's position here:

> (1) did the attorney impress upon the debtor the
> critical importance of accuracy in the preparation
> of documents to be presented to the Court; (2) did
> the attorney seek from the debtor, and then
> review, whatever documents were within the
> debtor's possession, custody or control in order to

MEMORANDUM OF DECISION - 16

> verify the information provided by the debtor; (3)
> did the attorney employ such external verification
> tools as were available and not time or cost
> prohibitive (e.g., on-line real estate title
> compilations, on-line lien search, tax "scripts") . . .

*In re Withrow*, 391 B.R. at 228.

Although Beeman's practice of asking his clients to initial each page

of the petition and schedules to verify their accuracy arguably allows him

to answer the first question posed above in the affirmative, the facts show

Beeman's performance fell short under the latter two standards.  Beeman

recognized there was a problem with the Gladman lien to the extent that he

advised Debtors to seek other counsel to address the issue.  But he

concedes that, when they returned to him, he never obtained or reviewed

Debtors' contract with Gladman, or documents evidencing the notation of

the lien on the certificate title to the motorhome.  He also never accessed

the Idaho Transportation Department's website to review the title

information on the motorhome.[10]  Moreover, Beeman never attempted to

---

[10]  Trustee represented, and Beeman has not disputed, that for a nominal
fee, Idaho title records are available on the internet to the public in a readily
searchable format.

MEMORANDUM OF DECISION - 17

contact the other attorney, although a simple phone call could have alerted

him to the fact that Debtors had decided to forgo the other attorney's help

and to adopt a "do-it-yourself" approach to resolving the lien issues.

Simply put, having previously identified that a problem may exist with the

Gladman lien, Beeman could not reasonably rely upon his clients'

statements that it was resolved to satisfy his responsibility to present

accurate schedules and to protect Debtors' interests in the bankruptcy case.

Following up on the validity of the Gladman lien was not an impractical

burden that could not be easily accomplished by Beeman under these

circumstances.

Apart from any special duty imposed upon him by the Code as

Debtors' lawyer in a bankruptcy case, all attorneys appearing in

bankruptcy cases in this District must adhere to the standards of

professional responsibility applicable to all licensed Idaho lawyers. *See*

LBR 9010.1(g) (providing that "[t]he members of the bar of this court shall

adhere to the Rules of Professional Conduct promulgated and adopted by

the Supreme Court of the State of Idaho. These provisions, however, shall

MEMORANDUM OF DECISION - 18

not be interpreted to be exhaustive of the standards of professional conduct

and responsibility.").  In Idaho, lawyers have a duty to zealously represent

their clients' interests and to provide competent representation.  *See* IDAHO

RULES OF PROF'L CONDUCT R. 1.1 (2003); *see also* IDAHO RULES OF PROF'L

CONDUCT, Preamble at ¶ 9.  The commentary to this rule provides insight

into the scope of this duty:

> Competent handling of a particular matter
> includes inquiry into and analysis of the factual
> and legal elements of the problem, and use of
> methods and procedures meeting the standards
> of competent practitioners. . . .  The required
> attention and preparation are determined in part
> by what is at stake;

IDAHO RULES OF PROF'L CONDUCT R. 1.1, cmt. 5.

In this case, as an experienced bankruptcy lawyer and former

chapter 7 trustee, Beeman appreciated that any lien on Debtors'

motorhome would be carefully scrutinized by Trustee.  Moreover, even

apart from the fact that the purported secured creditor in this case was

Debtors' close relative, in an earlier hearing in this case, Michael Dean

testified that he was unable to locate an apartment or other living

MEMORANDUM OF DECISION - 19

arrangements in Elko, Nevada, where he was working.  He further testified

that the motorhome was going to be his permanent residence in Nevada.

Given Beeman's familiarity with the potential for avoidance of liens in

bankruptcy cases, and the importance of this asset to Debtors, the Idaho

Rules of Professional Conduct required that Beeman make an effective

investigation of the validity of Gladman's lien in order to protect Debtors'

continued possession and ownership of the motorhome.  Beeman's

"assumption" that the lien had been properly perfected, based solely upon

his clients' statements to him, was inadequate.[11]  *See* Docket No. 74, ¶ 7.

---

[11]  Beeman's attention in this case focused solely upon the need for the
Gladman lien to be properly perfected before bankruptcy so as to defend against
a trustee's power to avoid unperfected liens under § 544(a).  However, Beeman
should also have been concerned about the trustee's power to avoid late-
perfected liens as a preference under § 547(b).  *See Fitzgerald v. First Sec. Bank of
Idaho, N.A., (In re Walker)*, 77 F.3d 322, 323-24 (9th Cir. 1996); *USAA Fed. Sav. Bank
v. Thacker (In re Taylor)*, 390 B.R. 654, 660 (9th Cir. B.A.P. 2008).  For reasons he
did not explain, Beeman stated flatly at the hearing that, "[p]reference was not an
issue in this case."  Docket No. 82, Transcript of Hearing, p. 22, line 11.  Given the
facts, the Court simply can not understand Beeman's lack of concern about the
potential for avoidance of Gladman's security interest as a preference, even had
it been properly noted on the motorhome title shortly before the bankruptcy
filing.  Indeed, since preferential transfers to "insiders" such as close relatives are
at risk for avoidance for a full year, perhaps the best advice for Debtors, if they
truly wanted to save the motorhome, would have been to avoid bankruptcy
altogether, at least for the near future.

MEMORANDUM OF DECISION - 20

### *Conclusion*

Prior to filing Debtors' petition, Beeman did not adequately inquire as to the accuracy of the information reported by Debtors in the schedules as required by § 707(b)(4)(D). Moreover, in failing to protect his clients' interests in the motorhome from Trustee's reach, Beeman did not satisfy applicable Idaho standards of professional responsibility to represent his clients diligently and competently. Because of his lack of diligence, while Debtors' obtained a discharge of their debts, they lost a critical asset in connection with the bankruptcy case.

Under these circumstances, the Court concludes that the fee Beeman collected from Debtors exceeds the reasonable value of his services, and a reduction pursuant to § 329(b) is warranted.[12] A separate order will be entered requiring Beeman to disgorge one-half, or $937.50, of the fee he received from Debtors. Under § 329(b), the Court may order the disgorged

---

[12] It might be argued that the deficiencies in Beeman's services to Debtors are so grave as to justify denial of all compensation. The Court presumes, however, that Debtors enjoyed some benefits from obtaining a chapter 7 discharge.

MEMORANDUM OF DECISION - 21

fees returned to the bankruptcy estate "or" to "the entity that made such

payment."  Exercising the discretion granted by this statute, the Court in

this case determines it appropriate that the fees be refunded to Debtors,

since it was their rights, not the bankruptcy estate's, that were most

prejudiced by Beeman's lack of diligence.

Dated:  December 16, 2008

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 22